**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
HARVEY KATZENBERG,

                  Plaintiff,

     - against -

COMMERCIAL KITCHEN DESIGNS, INC.,
GREGORY ROWEHL and BIRINDER
MADAN,

                  Defendants.
----------------------------------------------------------X

**OPINION & ORDER**

09-CV-0173 (ILG) (RER)

**RAMON E. REYES, JR., U.S.M.J.:**

*"Happy families are all alike;*

*every unhappy family is unhappy in its own way,"*

*Leo Tolstoy, Anna Karenina*

## INTRODUCTION

On January 16, 2009, Harvey Katzenberg ("Katzenberg"), a shareholder of Commercial Kitchen Designs, Inc. ("Commercial Kitchen"), brought this diversity action against the corporation and its other shareholders, Gregory Rowehl and Birinder Madan (collectively "Defendants") for breach of contract and breach of fiduciary duty. Katzenberg contends that pursuant to an oral agreement with his business partners he is owed at least $680,000 in dividends and distributions from the corporation. (Docket No. 1.) Before the Court is Katzenberg's December 30, 2009, motion for partial summary judgment on the issue of liability. (Docket No. 20.) For the reasons set forth below, the motion is denied.[1]

---

[1] The parties have consented to my jurisdiction to decide this motion pursuant to 28 U.S.C. § 636(c). (Docket No. 15.)

## BACKGROUND

**I.    Parties**

Katzenberg resides in Arizona and owns thirty-five percent of Commercial Kitchen. (Plaintiff's Rule 56.1 Statement of Uncontested Material Facts ("Pl.'s 56.1 Stmt.") ¶ 1; Defendants' Response to Plaintiff's Rule 56.1 Statement of Uncontested Material Facts and Counter-Statement of Uncontested Material Facts ("Defs.' 56.1 Stmt.") ¶ 1.)[2] Defendant Birinder Madan resides in New York and owns thirty-five percent of Commercial Kitchen. (Pl.'s 56.1 Stmt. ¶ 5; Defs.' 56.1 Stmt. ¶ 3.) Defendant Gregory Rowehl also resides in New York, owns thirty percent of Commercial Kitchen, and serves as Commercial Kitchen's President. (Pl.'s 56.1 Stmt. ¶¶ 6, 8; Defs.' 56.1 Stmt. ¶¶ 6, 8.)

Commercial Kitchen is a New York S-corporation. (Compl. ¶ 16; Pl.'s 56.1 Stmt. ¶¶ 2, 17; Defs.' 56.1 Stmt. ¶¶ 2, 17; *see also Gitlitz v. Comm'r*, 531 U.S. 206, 209 (2001) ("a corporation that had elected to be taxed under Subchapter S of the [Internal Revenue] Code, 26 U.S.C. §§ 1361- 1379 [under which] . . . . [t]he corporation's profits pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns. (citing 26 U.S.C. § 1366(a)(1)(A)). Commercial Kitchen designs, builds, sells, and installs commercial kitchens, and sells and installs cooking equipment. (Pl.'s 56.1 Stmt. ¶ 7; Defs.' 56.1 Stmt. ¶ 7.)

---

[2] Unless specifically controverted, material facts set forth in parties' Rule 56.1 Statement are deemed admitted. Local Rule 56.1©.

## II. Commercial Kitchen's Payments to the Shareholders and the Alleged Oral Agreement

There is no dispute that Commercial Kitchen made certain payments to Katzenberg, Rowehl and Madan until the fall of 2003, when the payments to Katzenberg ceased but continued to Madan and Rowehl. (Pl.'s 56.1 Stmt. ¶¶ 9, 17 at 3[3]; Defs.' 56.1 Stmt. ¶¶ 17 at 5,[4] 19 at 6, 20.) The parties dispute, however, whether these payments were consulting fees as Defendants claim, or dividends and distributions as Katzenberg claims. The parties also disagree whether the payments until 2003, however denominated, were made pursuant to a binding oral agreement.

Katzenberg argues that Defendants are bound by an oral agreement, under which Commercial Kitchen's "dividends and distributions, if made at all, would be made to each shareholder with respect to their pro rata interest in" the corporation. (Compl. ¶ 13.) According to Katzenberg, until 2003 Commercial Kitchen " regularly made distributions to Katzenberg, Madan[,] and Rowehl, (Pl.'s 56.1 Stmt. ¶ 9), some of which, "[f]or tax reasons," "were recorded on the books . . . of [the corporation] 'as consulting fees' or as purchases from an affiliated company," (*id.* ¶ 10). Katzenberg contends that the amount of the "consulting fees" each shareholder received was not related to any "consulting services" the shareholders "may or may not have provided to Commercial Kitchen." (*Id*. ¶ 13.) Instead, "distributions, regardless of

---

[3] Due to an apparent clerical error in the Plaintiff's Rule 56.1 Statement of Uncontested Material Facts, the paragraph following paragraph 17 is numbered 13, with further sequential numbering thereafter. *See* Pl.'s 56.1 Stmt. at 3. The Defendants' responsive submission mirrors the plaintiff's numbering, resulting in two sets of paragraphs numbered 13 through 17. To avoid further confusion, I will refer to the paragraphs as they are numbered, along with indicating on which page the paragraphs appear.

[4] The pages of Defendants' Response to Plaintiff's Rule 56.1 Statement of Uncontested Material Facts and Counter-Statement of Uncontested Material Facts are not numbered. To avoid confusion, I will refer to the pages as if they were properly numbered.

form, were always made strictly pro rata to" each shareholder's ownership of the corporation. (*Id.* ¶ 12.)

Defendants deny these allegations and argue that no such oral agreement ever existed. Defendants contend that Commercial Kitchen "treated" the payments "as consulting fees or repayment of officer loans" on its tax returns, while Katzenberg and Madan treated these payments as income and not distributions to shareholders. (Defs.' 56.1 Stmt. ¶¶ 9–13, 21–22.) Defendants admit that no written consulting services agreement between Commercial Kitchen and Madan ever existed. (Pl.'s 56.1 Stmt. ¶ 16 at 4; Defs.' 56.1 Stmt. ¶ 16 at 5.)

Katzenberg demands $180,000 and $500,000 in damages on his breach of contract and breach of fiduciary duty claims, respectively, including punitive damages. (Compl. ¶¶ 24–25.) He contends that he continues to accrue federal tax liability on, but does not actually receive, his pro rata share of Commercial Kitchen's income. (*Compare* Pl.'s 56.1 Stmt. ¶ 18 at 5 with Defs.' 56.1 Stmt. ¶ 18 at 6 (denying the allegation).)

## III. Related Disputes

Katzenberg contends that the Defendants' conduct here is related to the dispute in another action pending in this District, *Acme Am. Repairs, Inc. v. Katzenberg*, No. 03-CV-04740 (RRM) (SMG). Katzenberg argues that after Commercial Kitchen[5] brought that action together with related companies, the Defendants began withholding Katzenberg's share of Commercial Kitchen's dividends and distributions in order to create a "recovery fund." (Compl. ¶ 14, 22.)

---

[5] "Commercial Kitchen Designs, Inc." is not listed as a named plaintiff in *Acme Am. Repairs, Inc. v. Katzenberg*, No. 03-CV-04740 (RRM) (SMG).

It is undisputed that Commercial Kitchen has been implicated in at least three lawsuits and one arbitration involving Katzenberg and the corporate family of which Commercial Kitchen is a part (the "Acme Group"). To understand the dynamics involved here, it is necessary to briefly describe the related disputes.

### A. *Acme Am. Repairs, Inc. v. Harvey Katzenberg and Pearl Katzenberg*, No. 03-CV-04740 (RRM) (SMG)

On September 18, 2003, members of the Acme Group[6] brought this action against Katzenberg and his wife Pearl for (1) mail fraud, (2) wire fraud, (3) breach of fiduciary duty, (4) fraud, (5) breach of contract, (6) breach of duty of loyalty, (7) breach of duty of care, (8) conversion, and (9) violations pursuant to 18 U.S.C. § 1961. (Compl. in *Acme Am. Repairs, Inc. v. Katzenberg*, No. 03-CV-04740 (RRM) (SMG) ("*Acme Am. Repairs*") ¶ 1.) Plaintiffs alleged that Katzenberg, as president and chief executive officer of each corporate plaintiff, and Pearl Katzenberg, an independent insurance agent and an employee of each corporate plaintiff, conspired to defraud the plaintiffs "of moneys spent to procure corporate insurance policies." (*Id.* ¶ 1, 15, 18.) Defendants appearing before this Court allege that Katzenberg was "actively involved with his wife Pearl Katzenberg in stealing close to $200,000.00 from Commercial [Kitchen] and over 1.8 [m]illion dollars from the Acme Companies." (Affirmation in Opposition, George R. Gridelli ("Gridelli Aff.") at ¶ 22.)

---

[6] Acme American Repairs, Inc., Acme American Environmental Co, Inc., Acme Commercial Kitchen Design, Inc., Acme American Refrigeration, Inc., Acme Pacific Repairs, Inc., Bana Parts, Inc., and Bana Parts Commercial Kitchen, Inc. *Acme Am. Repairs v. Katzenberg*, No. 03-CV-04740 (RRM) (SMG).

The case is currently pending, with summary judgment motions *sub judice*. However, Katzenberg essentially admitted that he defrauded not only the Acme Group, but their insurers as well.[7]

B. **Arbitration and State Court Actions in California**

On October 8, 2004, Katzenberg, who is a shareholder of Acme Pacific Repairs, Inc., commenced an action against the corporation and its other shareholders — Birinder Madan, Joseph Fitzpatrick, and Edward J. Lee. — in the California Superior Court for Alameda County, compelling them to arbitrate his claim for corporate distributions pursuant to a Stockholder Agreement dated June 30, 1988. (Plaintiff's Harvey Katzenberg's Declaration in Support of Motion for Partial Summary Judgement" ("Katzenberg Decl."), Exh. B, at 2.) Applying California law, the arbitrator found that "the corporate distributions [in question] were unrelated to ['the insurance fraud which Katzenberg admits'] and could not be withheld to [sic] him on that basis, when payments were made to the other shareholders." (*Id*. at 5.) Based on the decision, Katzenberg "is entitled to an award against Acme Pacific [Repairs, Inc.] only . . . . [and receive

---

[7] The admitted fact of this scheme were that Katzenberg and his wife altered job descriptions for employees with high workers compensation ratings to make them appear as office personnel, falsified total payroll numbers, maintaining two sets of payroll books, all for the purpose of lowering Acme's payrolls that were reported to the corporation's workers compensation insurance company, to obtain lower workers compensation classifications and resulting lower premiums. Alan [an insurance brokerage firm partly owned by Katzenberg] then took an undisclosed risk management fee based upon a percentage of the premium savings resulting from the scheme and incorrectly invoiced Acme Pacific for a premium that included Alan's risk management fee.

Katzenberg Decl., Exh. B at 3.

his proportionate share of any future distributions from [the corporation] . . . if and when such are made to any of the other shareholders, no matter how they are denominated. (*Id.*)

C. *G.K. Alan Assoc., Inc. v. Lazzari*, **Index No. 13456/03**

G.K. Alan Assoc., Inc. sued Derval Lazarri in Supreme Court of the State of New York for fees due pursuant to a consulting agreement under which the plaintiff was to assist Lazzari in operating the business of certain members of the Acme Group. (Gridelli Aff., Ex. F, *G.K. Alan Assoc., Inc. v. Lazzari*, Index No. 13456/03, at 1–2.) The defendant counterclaimed against the plaintiff and Katzenberg, asserting that Katzenberg engaged in insurance fraud and was not entitled to the fee under the "faithless agent" rule. *Id.* Katzenberg has admitted that as part of the fraudulent scheme he maintained a second set of false payroll records and supplied false information to the Acme Group's insurers. (*Id.* 6.) After thirteen-day trial, the court found that the defendant was entitled to terminate the consulting agreement with the plaintiff due to the insurance fraud and embezzlement. (*Id.*)

## DISCUSSION

I. **Summary Judgment Standards**

A court may grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). On this motion, the court has to determine whether there exists a genuine issue of fact for trial, *Anderson,* 477 U.S. 242 at 249, — that is whether, based on the evidence in the case, a reasonable jury could return a verdict for

the non-moving party. *Beyer v. County of Nassau*, 524 F.3d 160, 163 (2d Cir. 2008); *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 178-79 (2d Cir.2008).

The moving party bears the burden of proving the absence of a genuine issue of material fact. *Celotex Corp.,* 477 U.S. at 323. Conclusory allegations or "some metaphysical doubt as to the material facts" fail to create such issue. *Delaware & Hudson Ry. Co. v. Consolidated Rail Corp.*, 902 F.2d 174, 178 (2d Cir.1990) (citations and internal quotation marks omitted).

When the moving party has met its burden, the party opposing the motion "must set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. In determining whether there is a genuine issue of material fact, a court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Gibbs-Alfano v. Burton*, 281 F.3d 12, 18 (2d Cir. 2002). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991).

Summary judgment is "perfectly appropriate" in a contract dispute where the parties' "intent can readily be determined." *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir.1989). Nevertheless, a court may grant summary judgment only if the language of the contract is "wholly unambiguous." *Compagnie Financiere de CIC et de L'Union Europeenne v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 232 F.3d 153, 157– 58 (2d Cir. 2000) (citation omitted); *Shaftel v. Dadras*, 39 F. Supp. 2d 217, 225 (E.D.N.Y. 1999) (summary judgment is appropriate where the contract conveys a "definite and precise meaning absent any ambiguity").

## II. Katzenberg's Breach of Contract Claim

To establish a breach of contract claim under New York law,[8] a plaintiff must prove: (1) the existence of an agreement, (2) adequate performance by the plaintiff, (3) breach of contract by the defendant, and (4) damages. *Terwilliger v. Terwilliger*, 206 F.3d 240, 245-46 (2d Cir. 2000); *First Investors Corp. v. Liberty Mut. Ins.*, 152 F.3d 162, 168 (2d Cir. 1998); *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

New York recognizes oral agreements as binding on the parties. N.Y. Gen. Oblig. § 5-701. Formation of such a contract is determined by the parties' *objective* expressions of intent, including their words and actions. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984); *Haskell Co. v. Radiant Energy Corp.*, No. 05-CV-4403, 2007 WL 2746903, at *8 (E.D.N.Y. Sept. 19, 2007) (citing *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). "[A] primary concern for courts in [disputes involving oral agreements] is to avoid trapping parties in surprise contractual obligations that they never intended." *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 72 (2d Cir. 1989). A court should apply a four-factor test "to determine whether the parties intended to enter into a binding oral agreement: (1) whether there has been an express reservation between the parties not to be bound absent a formal writing; (2) whether one party has partially performed the contract; (3) whether there are material terms left to be negotiated; and (4) whether it is the type of agreement that is usually reduced to a writing." *Shaftel v. Dadras*, 39 F. Supp. 2d 217, 225 (E.D.N.Y. 1999) (citing *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997).

---

[8] There is no dispute that New York law applies.

Partial performance by one party is strong circumstantial proof of the existence of an agreement. *Cleveland Wrecking Co. v. Hercules Const. Corp.*, 23 F. Supp. 2d 287, 296 (E.D.N.Y. 1998) (relying on *Metro-Goldwyn-Mayer, Inc. v. Scheider*, 40 N.Y.2d 1069, 1070–71 (1976)); *Dimario v. Coppola*, 10 F. Supp. 2d 213, 220 (E.D.N.Y. 1998) (same). The doctrine of part performance, however, may be invoked only if the actions constituting partial performance are 'unequivocally referable' to the alleged agreement, or "unintelligible or at least extraordinary," explainable only with reference to the oral agreement;" "actions that . . . could also have been done for entirely different reasons are insufficient to prove the existence of the agreement." *Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc. v. Aegis Group Plc*, 150 F.3d 194, 196 (2d Cir. 1998) (relying on *Anostario v. Vicinanzo*, 450 N.E.2d 215, 216 (N.Y. 1983). To prevail on this motion, Katzenberg has to show that there is no genuine issue of material fact with respect to each element of his breach of contract claim, including the existence of such contract. Based on the four factor test for determining whether the parties intended to enter into a binding oral agreement, Katzenberg has failed to satisfy his burden.

Katzenberg focuses his attention on the second of the four factors – whether one party has partially performed the contract – by emphasizing that prior to 2003 Commercial Kitchen made pro rata distributions to each shareholder. (Katzenberg Decl. ¶ 9.) By so focusing his attention, Katzenberg seems to argue that this purported pre-2003 partial performance standing alone should prove the oral contract's existence.[9] Curiously, however, Katzenberg has never stated

---

[9] It is notable that Katzenberg does not address the three other factors that must be weighed to determine whether an oral agreement existed – whether there has been an express reservation between the parties not to be bound absent a formal writing; whether there are material terms left to be negotiated; and whether it is the type of agreement that is usually reduced to a writing.

when and where the Commercial Kitchen shareholders made this alleged oral agreement.  Also, Katzenberg concedes that "certain of [Commercial Kitchen's pre-2003] distributions" were recorded on corporate books as "consulting fees" as defendants argue.

Even assuming that until 2003 Commercial Kitchen made payments to its shareholders on a pro rata basis, that alone would not necessarily establish as a matter of law that the alleged oral agreement existed.  Again, partial performance must be "unequivocally referable" to the alleged agreement.  *Messner Vetere Berger McNamee Schmetterer Euro RSCG Inc.*, 150 F.3d at 196.  Since Commercial Kitchen may have made such pre-2003 payments for a variety of reasons, even in the absence of any oral agreement between the parties, these payments standing alone would not establish the existence of the agreement Katzenberg alleges.  Further, that such payments were made until 2003 would not establish that the shareholders previously agreed that distributions would continue in perpetuity on a pro rata basis.

Finally, even if the alleged oral agreement existed as Katzenberg claims, that would not establish as a matter of law that the post-2003 payments to Rowehl and Madan were dividends or shareholder distributions under that oral agreement.  Critically, Defendants flatly contradict that the post-2003 payments were distributions or dividends, and specifically allege that payments to Madan were in fact consulting fees, (Affidavit of Birinder Madan ("Madan Aff.") at ¶¶ 2, 4), and that payments to Rowehl constitute his salary as President of Commercial Kitchen (Affidavit of Gregory Rowehl ("Rowehl Aff.") at ¶¶ 10, 11).  Since the parties genuinely dispute the nature of these post-2003 payments, there is a issue of material fact as to whether defendants breached the purported oral agreement on pro rata distributions, even if the agreement existed.

On this motion for summary judgment, Katzenberg has the burden of showing the absence of a genuine issue of material fact on all the elements of his breach of contract claim. While he has come forth with some evidence that an oral agreement existed, that evidence is hardly conclusive, and certainly not "unequivocally referable" to the alleged agreement, especially in light of the Defendants' denials that any such agreement existed. Also, it cannot be said that there is no genuine issue of material fact that defendants breached the purported oral agreement by making post-2003 distributions to Rowehl and Madan, and not Katzenberg. Simply put, Katzenberg has failed to sustain his burden, and summary judgment on his breach of contract claim must be denied.

### III. Katzenberg's Breach of Fiduciary Duty Claim

"Under New York law, the elements of a breach of fiduciary duty claim are (1) that a fiduciary duty existed between plaintiff and defendant, (2) that defendant breached that duty, and (3) damages as a result of the breach." *Sheehy v. New Century Mortg. Corp.*, 690 F. Supp. 2d 51, 62 (E.D.N.Y. 2010). Shareholders in a closely held corporation, especially those actively managing it, owe a fiduciary duty to each other. *Littman v. Magee*, 860 N.Y.S. 2d 24, 27 (N.Y. App. Div. 2008); *Global Minerals and Metals Corp. v. Holme*, 824 N.Y.S.2d 210, 214 (N.Y. App. Div. 2006). "As fiduciaries, they are obligated to exercise their responsibilities in good faith" and "treat all shareholders, majority and minority, fairly." *Dingle v. Xtenit, Inc.*, 20 Misc. 3d 1123(A), 2008 WL 2840357, at *3 (N.Y. Sup. Ct. 2008) (citing *Alpert v. 28 Williams Street Corp.*, 63 N.Y.2d 557, 569 (N.Y. 1984) and other cases). "This is a sensitive and inflexible rule of fidelity . . . requiring avoidance of situations [where] a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty; this rule cannot be "extinguished by [a

defendant's] acrimonious relationship with [the plaintiff]." *Global Minerals*, 824 N.Y.S.2d at 214–15 (N.Y. App. Div. 2006) (citations and internal quotation marks omitted).

"Departure from precisely uniform treatment of stockholders may be justified, of course, where a bona fide business purpose indicates that the best interests of the corporation would be served by such departure." *Schwartz v. Marien*, 37 N.Y.2d 487, 492 (N.Y. 1975). Once the plaintiff establishes "a prima facie case of unequal stockholder treatment," the "burden of coming forward with proof of such justification shifts" to the majority shareholders and directors. *Id.* at 492. The assessment of business purpose and defendants' good faith "depend not only on an analysis of the objective facts but as well in part on an appraisal of defendants' motives, involving as it will issues of credibility. *Goldberg v. Goldberg*, 527 N.Y.S.2d 451, 453 (N.Y. App. Div. 1988) (citation and internal quotation marks omitted).

Rowehl, as the President and a shareholder of Commercial Kitchen, and Madan, as a shareholder, have a fiduciary duty to the corporation and their fellow shareholder Katzenberg. Katzenberg argues that the individual defendants breached this duty "[b]y causing and arranging [Commercial Kitchen] to not pay him dividends." (Pl.'s Mem. at 14.) However, as discussed above, Katzenberg has failed to meet his burden of showing that there exists no genuine issue of material fact as to (1) the existence of the oral agreement, and (2) whether the post-2003 payments are in fact dividends and not consulting fees or salary. Moreover, even if the individual defendants departed from the uniform treatment of stockholders when they distributed dividends to themselves, but not to Katzenberg, their actions may be justified by a bona fide business purpose, whether because of Katzenberg's fraud or for some other reason.

Construing the evidence in the light most favorable to the Defendants as the non-moving party, I find that a rational jury could find that more likely than not the purported oral agreement between the parties did not exist and the Defendants did not breach their duty to Katzenberg. Accordingly, summary judgment is denied on this claim.

## IV. Defendants' Affirmative Defenses

In opposing Katzenberg's motion for partial summary judgment, defendants rely on the affirmative defenses of statute of limitations, judicial estoppel and unclean hands. Given the denial of Katzenberg's motion, and in light of the fact that defendants have not affirmatively moved for summary judgment on their defenses, it is inappropriate to adjudicate the defenses now.

## CONCLUSION

For the reasons stated above, Katzenberg's motion for partial summary judgment is denied. As discovery has closed, the parties are hereby ordered to submit a joint pretrial order to the assigned district judge no later than October 15, 2010.

**Dated: Brooklyn, New York**
      **September 15, 2010**

*Ramon E. Reyes, Jr.*
**Ramon E. Reyes, Jr.**
**United States Magistrate Judge**